Law Offices of Lance C. Wells, P.C.
733 W. 4th Ave, Suite 308
Anchorage, Alaska 99501
Phone: 907/274-9696
Fax: 907/277-9859
E-mail: lwells@gci.net
AK # 9206045

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| RONALD D. SORENSEN, ) | |
| ) | |
| Defendant. ) | |
| _____) | Case No. 3:06-cr-00019-RRB |

**MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO SUPPRESS
EVIDENCE DERIVED FROM SEARCH WARRANT 3AN-05-1286 SW**

**I.   Facts.**

On December 10, 2005, Mr. Thomas rented his residence at 520 Carin Place, #2. At about 10:45 p.m. that evening, Mr. Thomas was going to his truck, and noticed a woman, later identified as the defendant, Sandra Mitchell, standing in the road. She appeared to him to be suspicious and seemed to be hiding, and seemed scared and upset. Although he was approximately twenty yards from her, he could not understand what she was saying. The temperature was between thirty degrees Fahrenheit and thirty-seven degrees Fahrenheit, and the woman

was wearing a light jacket with a hood. She was carrying a big bag which she held close to her body with both of her hands. Mr. Thomas did not know the woman, and perceived she was in trouble. Although Ms. Mitchell said nothing threatening to Thomas, he became fearful for the safety of his family. He went inside to call 9-1-1. While inside, he observed Ms. Mitchell go into a neighbor's yard and then into his yard. He waited on his front porch for police to arrive.

Anchorage Police Officers Gregory Whitte and Eric Smith arrived at 520 Carin Place before eleven o'clock p.m. at about the same time. They parked about two houses away. When Officer Smith arrived, he observed Officer Whitte standing in a driveway with Ms. Mitchell in front of him. Ms. Mitchell was pacing back and forth in front of the officer, and flailing her arms. She was wearing a long sleeved T-shirt and had her coat tied around her waist. Officer Whitte motioned to Officer Smith to come forward. Officer Whitte then told Officer Smith that he believed they had an "eleven-thirty-eight" (police jargon for person with a mental problem). Ms. Mitchell appeared nervous and kept looking behind her back and glaring over her shoulder although no one else was there. Her hair appeared very curly and frizzy, almost standing straight up. Ms. Mitchell repeatedly told the officers not to touch her.

The officers decided to detain Ms. Mitchell and take her to Providence Hospital for an evaluation. They attempted to cuff Ms. Mitchell but she continued to clutch the bag with both hands. As Officer Smith attempted to cuff Ms. Mitchell, she pulled her arm from him toward the bag. Meanwhile, Police Officer Jack Carson had arrived at the scene and took the bag from Ms. Mitchell. Ms. Mitchell was yelling, "Stay away; don't touch me; I've done nothing wrong." During the tug-of-war that Officer Carson had with Ms. Mitchell over the bag, the officer jerked the bag out of her hand and some of the contents scattered on the ground.

Ms. Mitchell declined to identify herself. At the scene, Officer Whitte told Officer Carson that Ms. Mitchell claimed that she was Sandra Bullock. While at the scene, Officer Whitte had run that name and found no match for Sandra Bullock.

After Ms. Mitchell was placed in a patrol car, Officer Smith asked her if she had any mental issues. Ms. Mitchell responded that she did not, but added she had smoked two much meth and needed to go to the hospital. Ms. Mitchell had not been advised of her <u>Miranda</u> warnings prior to that colloquy. Officer Smith characterized the initial custody of Ms. Mitchell as detention for her care, and for public safety, not for the purpose of arresting her for a crime.

At the scene, Office Carson looked into the bag for any identification for the person, medicine, or weapons. Finding no identification, he looked inside this small "cat" bag and found a coffee cup with what looked like snow. His first impression was that she was bagging snow based upon her bizarre behavior. Shortly thereafter he recognized the substance might be crystal methamphetamine. He ceased his search and conducted a field test which proved positive for methamphetamine. Ms. Mitchell had previously told the officers that she had smoked too much meth and needed to go to the hospital. Because the officers found suspected illicit drugs on Ms. Mitchell, they arrested her and took her to jail rather than to the hospital. This is despite the fact that Ms. Mitchell told them she needed to go to the hospital due to the fact she had smoked too much methamphetamine. Police then went to the Alaska State Courthouse and sought a warrant for Ms. Mitchell's home. The court denied the warrant application.

Meanwhile, at the Drug Enforcement Agency, police undertook to interrogate Ms. Mitchell. One of the officers was Gordon Dorr, an attorney licensed in the State of Georgia. Officer Dorr works for the Anchorage Police Dept as a law enforcement officer. In a tape-recorded conversation, police read Ms. Mitchell a <u>Miranda</u> warning. Ms. Mitchell unequivocally asserted her right to counsel. The police then turned the tape off. Off-

tape, police officers apparently explained to Ms. Mitchell the potential consequences of her conduct. Approximately fifteen minutes later, police went back on tape, and Ms. Mitchell gave a statement. She confessed to her involvement with the contraband; where the contraband came from; how it arrived; and gave additional information regarding contraband within her residence. Officer Dorr, who obtained the illicit confession, went back to the state courthouse and obtained a warrant for Ms. Mitchell's house. The warrant issued is 3AN-05-1286 SW.

During the course of the post-<u>Miranda</u> interrogation, the confession portion, Ms. Mitchell further admitted that she had put some of the packaging for the contraband, found in her possession, in garbage bags on her next-door neighbor's property. Police recovered this evidence during the execution of the search warrant, along with various other documentation of alleged drug activity, as well as drugs themselves.

No affidavit was submitted by Officer Gordon Dorr. Instead, he gave sworn testimony before the Alaska Court Magistrate, who ultimately issued the warrant.

The testimony given by Officer Dorr, in support of the warrant, was based on the information given by Ms. Mitchell. Furthermore, Officer Dorr states during his testimony to the Magistrate,

> I don't have any knowledge prior to her statements tonight of those two working in concert. (Referring to Sorensen and Mitchell)

Ultimately, the Magistrate issued the warrant.

Subsequently, Ms. Mitchell and Mr. Sorensen were charged in this matter. Ms. Mitchell, through her attorney of record Michael Dieni with the Federal Defenders Office, filed five motions to suppress as follows: Motion to Suppress Warrantless Search of Defendant's Possessions, Docket No. 28; Motion to Suppress Defendant's Statement, Docket No. 29; Motion to Suppress Evidence Seized from Neighbor's Garage, Docket No. 31; Motion to Suppress Evidence Seized from Defendant's Home Pursuant to Search Warrant, Docket No. 33; and, lastly, Motion to Suppress Statements, Docket No. 41.

At the commencement of Ms. Mitchell's evidentiary hearing conducted February 3, 2006, the government withdrew its opposition to Docket Nos. 29, 31 and 33, on grounds that it does not intend to offer the evidence sought to be suppressed in those motions. As a result thereof, the court granted as unopposed, the motions to suppress at Docket Nos. 29, 31 and 33.

Defendant respectfully moves to suppress all evidence derived as a result of the issuance of Search Warrant 3AN-05-1286 SW, as the warrant was lacking probable cause, and that the investigating officer, Gordon Dorr, knowingly and intentionally,

and/or recklessly failed to bring to the attention of the issuing magistrate that defendant Sandra Mitchell was under the influence of methamphetamine and had made statements that she needed to go to the hospital because she had smoked too much meth and that she was Sandra Bullock.

## II.  Argument.

In <u>Illinois v. Gates</u>, 462 U.S. 213 to 238-39, 76 L.Ed.2d 527, 103 S.Ct. 2317 (1983), the United States Supreme Court stated:

> The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for...concluding" that probable cause existed. <u>Jones v. United States</u>, 362 U.S. 257, 251, 80 S.Ct. 725, 736 4.L.Ed.2d 697.

An assessment of probable cause can be based on various factors, including statements against penal interests, <u>United</u>

States v. Dozier, 826 F.2d 866, 871-72 (9th Cir. 1987); purchases of controlled substances under controlled circumstances, United States v. Angulo-Lopez, 791 F.2d 1394, 1397-99 (9th Cir. 1986); the details of the information, United States v. Estrada, 733 F.2d 683, 685-86 (9th Cir. 1984); the presence of interlocking tips, United States v. Landis, 726 F.2d 540, 541-44 (9th Cir. 1984); and corroboration by the police, as well as the training and experience of the affiant.

"For an affidavit in support of a search warrant to establish probable cause, the facts must be sufficient to justify a conclusion that the property which is the object of the search is probably on the premises to be searched at the time the warrant is issued." United States v. Baldwin, 987 F.2d 1432, 1435 (9th Cir. 1993).

A review of the audio-taped proceedings before the issuing magistrate[1] in support of the search warrant shows that the information provided by Ms. Mitchell was clearly against her penal interest. However, there was no independent corroboration done by any of the officers involved. Furthermore, Officer Dorr intentionally and recklessly did not mention to the magistrate that Ms. Mitchell had previously thought she was "Sandra Bullock" earlier in the evening; that she was going to be taken to Alaska Psychiatric Institute prior to the officers' finding

---

[1] A copy of the tape will be provided during the evidentiary hearing.

narcotics upon her; and that she was subsequently arrested; and failed to bring to the attention of the issuing magistrate that Ms. Mitchell had made statements to the effect that she had smoked too much meth, and needed to go to the hospital. Based upon Ms. Mitchell's obvious condition, delusions and hallucinations, the information given by her cannot be considered reliable. Furthermore, as set forth above, there is no independent corroboration of any of the information given by Ms. Mitchell. Furthermore, there is no interlocking evidence linking Mr. Sorensen to Ms. Mitchell, other than the statements given by Ms. Mitchell when she was in what could best be described as "a methamphetamine-induced period of hallucination, confusion, and the need of emergency medical treatment--both for her mental condition as well as her physical condition, based upon her statements that she needed to go to the hospital due to the fact she had smoked too much methamphetamine.

In the case of the search warrant issued above, there was a lack of probable cause for its issuance. The evidence derived therefrom should be suppressed.

Officer Dorr had an obligation to inform the issuing magistrate of Ms. Mitchell's medical condition; her request to go to the hospital due to the fact she had ingested too much methamphetamine by smoking it; her hallucinations in that she was Sandra Bullock; her confused and disheveled state; as well

as the fact she had invoked her right to counsel subsequent to her <u>Miranda</u> warning; and that Officer Dorr subsequently violated her right to counsel by continuing to question her upon threats of what could happen to her if convicted, thereby eliciting her confession which led to the issuance of the above search warrant. Office Dorr did this intentionally, deliberately, and/or recklessly disregarded the truth.

A search warrant is presumably valid. To overcome this presumption, a defendant must prove by a preponderance of the evidence that there was a knowing and intentional falsehood or reckless disregard for the truth, and that the challenged statement was essential to the finding of probable cause. <u>United States v. Dozier</u>, 844 F.2d 701, 704 (9th Cir. 1988).

In order to obtain a hearing challenging the affidavit (or, in this case, the oral testimony submitted by Officer Dorr) submitted to a judge pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154, 57 L.Ed.2d 667, 98 S.Ct. 2674 (1978), a defendant must (1) allege specifically which portion of the affidavit or claim to be false; (2) contend that the false statements or omissions were deliberately or recklessly made; (3) make a detailed offer of proof, including an affidavit, to accompany the challenge; and (4) may only challenge the veracity of the affiant. In addition, the material that the defendant challenges must have

been necessary to the finding of probable cause. <u>United States v. DiCesare</u>, 765 F.2d 890, amended, 777 F.2d 543 (9th Cir. 1985).

In turning to the above criteria, portions of the testimony given by Officer Dorr, that are claimed to be false, first surround the alleged "post-<u>Miranda</u> interview" with Ms. Mitchell. There was no valid waiver of <u>Miranda</u> by Ms. Mitchell. Officer Dorr was well aware of this as he has been trained in the law. Furthermore, Office Dorr is an attorney. It is believed that he is licensed in the State of Georgia, but has not yet taken the Alaska Bar. In essence, Mr. Dorr's training regarding <u>Miranda</u> is substantially greater than that of the ordinary officer, specifically when it comes to waiver of <u>Miranda</u>, and request for an attorney. Ms. Mitchell requested counsel. Officer Dorr disregarded her request. Furthermore, Officer Dorr failed to specifically bring to the attention of the issuing magistrate, issues concerning Ms. Mitchell's mental health, the fact that she was going to be transported to the hospital for psychiatric observation, the fact that Ms. Mitchell had indicated she needed to go to the hospital for smoking too much methamphetamine, the fact that she was suffering from hallucinations and believing that she was the actress, Sandra Bullock, as well as the fact she was high on methamphetamine at the time of the interview. Furthermore, Officer Dorr states to the issuing magistrate that Mr. Sorensen was arrested on December 8, 2005, at which time he

was found in possession of a suitcase which contained methamphetamine. This is incorrect, in that the suitcase has not been linked by way of fingerprints or otherwise to the defendant. In fact, when contacted, both defendant and Ms. Cameron (defendant's acquaintance), both denied ownership of the suitcase found in the hotel room in which Mr. Sorensen was arrested, located at the Ramada Inn, Room 207, at 207 Muldoon Road, Anchorage, Alaska.

Lastly, the government may argue that the defendant does not have standing. This is incorrect. As can be seen by defendant's attached affidavit, he had a key to the residence, his clothes and other belongings were at the residence, he was living at the residence on and off, and could come and go from the residence as he pleased. Ms. Mitchell and Mr. Sorensen could best be described as room-mates. As such, he has standing to bring this motion.

Defendant further moves to suppress all evidence removed from the neighbor's trash as fruits of the poisonous tree. It is inevitable that if the search of the residence fails due to lack of probable cause, and based upon the intentional, and reckless statements and omissions made by Officer Dorr, then the evidence seized from the neighbor's trash would be suppressible as the fruit of the poisonous tree. See Wong Sun v. United States, 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); quoting Wong

Sun v. United States, 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

### III. Conclusion.

It is respectfully requested that all evidence derived from the issuance of Search Warrant 3AN-05-1286 SW be suppressed, including any and all items removed from the neighbor's garbage.

RESPECTFULLY SUBMITTED this 17th day of July 2006.

LAW OFFICES OF LANCE C. WELLS, P.C.

s/Lance C. Wells
Attorneys for Ronald D. Sorensen
733 W. 4th Ave, Suite 308
Anchorage, Alaska 99501
Phone: 907/274-9696
Fax: 907/277-9859
E-mail: lwells@gci.net
AK # 9206045

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on
July 17th, 2006, a copy
of the foregoing was served
electronically:

David A. Nesbett
Asst. U.S. Attorney
david.nesbett@usdoj.gov

s/Lance C. Wells