DEBORAH M. SMITH
Acting United States Attorney

DAVID A. NESBETT
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, Room 253, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: david.nesbett@usdoj.gov


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:06-cr-00019-RRB-JDR |
| | ) | |
| Plaintiff, | ) | **UNITED STATES'** |
| | ) | **OPPOSITION TO** |
| vs. | ) | **DEFENDANT'S SECOND** |
| | ) | **MOTION** |
| RONALD D. SORENSEN, | ) | **TO SUPPRESS** |
| | ) | |
| Defendants. | ) | |
| | ) | |

I.      INTRODUCTION

The defendant, Ronald D. Sorensen, moves to suppress all evidence derived

from Search Warrant 3AN-05-1286 SW.  The search warrant was based on

probable cause and Officer Dorr did not intentionally or purposefully deceive the

magistrate in order to obtain probable cause for the issuance of the search warrant for the residence.  The search warrant was issued based upon the statements by Sandra Mitchell, which were voluntarily and knowingly given to officers. Therefore, the government opposes the defendants' motions.

II.    <u>FACTS</u>

On December 10, 2005 Kevin Thomas rented a residence at 520 Carin Place No. 2.  About 10:40 PM, Thomas was going back to his truck and noticed a woman, later identified as Sandra Mitchell, standing in the road.  She appeared to be acting suspicious and seemed to be hiding.  She also seemed scared and apparently upset.  Although he was about twenty yards from her, he could not understand what she was saying.  She was wearing a light jacket and carrying a big bag which she held close to her body with both hands.  Thomas did not know the woman and perceived she was in trouble.  Although Mitchell said nothing threatening to Thomas, he became fearful for the safety of his family.  He went inside and called 911.  While inside, he observed Mitchell go into a neighbors yard and then into his yard.  Thomas waited on his front porch for the police to arrive.

Anchorage Police Officers Witte and Smith arrived at 520 Carin Place shortly before 11:00 PM.  They parked two houses away.  Mitchell was pacing back and forth in the driveway and flailing her arms.  She was wearing a long sleeve t-shirt and had her coat tied around her waist.  Officer Witte told Officer

2

Smith that he believed they had an "eleven-thirty-eight" (police jargon for person with a mental problem).  Mitchell appeared nervous and kept looking behind her back and glaring over her shoulder.  Her hair appeared very curly and frizzy, almost standing straight up.  Apparently, Mitchell claimed that she was Sandra Bullock.  While at the scene, Officer Witte had run that name and found no match for a Sandra Bullock.

The officers then asked Mitchell to begin walking to the patrol car so she would no longer be trespassing.  Officer Witte tried to assist her in walking on the icey ground, but she moved away and told him she did not like to be touched. Officer Witte explained to her that she was behaving in a manner that could be considered detrimental to her health and he may have to transport her to a family member or to Providence Hospital to ensure she was not going to harm herself unintentionally.

The officers decided to detain Mitchell and place her in handcuffs due to her erratic behavior.  While attempting to cuff her, Mitchell resisted and attempted to pull away from the officers.  Officer Jack Carson had arrived at the scene and had to try to pry the bags out of her hand as she was holding them as tight as she could. During the tug of war, Officer Carson jerked the bag out of her hand and some of the contents scattered on the ground.

Mitchell was secured in the back of the patrol car and then Officer Carson

looked into the bag for any identification, medicine, or weapons. Finding no

identification, he looked inside this small "cat" bag and found a coffee cup with

what looked like snow. His first impression was that she was bagging snow based

upon her bizarre behavior. Shortly thereafter he recognized the substance might be

crystal methamphetamine. He ceased the search and conducted a field test which

tested positive for methamphetamine.

 While in the patrol car, Mitchell was laughing and could not sit still. She

was constantly moving from side to side along the backseat. Officer Smith asked

her if she had any mental issues and Mitchell responded that she did not, but she

was just high on "meth" she had consumed earlier. Mitchell had not been advised

of her Miranda warning prior to that colloquy. Officer Smith characterized the

initial contact of Ms. Mitchell as detention for her care, and for public safety, not

for the purpose of arresting her for a crime.

 Officer Witte decided to transport Mitchell to the DEA building to be

interviewed by himself and Officer Gordon Dorr. Mitchell declined an offer for

water and use of the restroom. With a recorder running, Officer Dorr read Mitchell

her rights under Miranda. Mitchell initially advised that she wanted a lawyer, but

then advised she was willing to answer questions.

 Mitchell stated that she and Ron Sorensen had been receiving packages

containing methamphetamine at her residence, 5908 Craig Drive. Mitchell added

that Sorensen had provided her name with the name of a source in Fresno, and that the two had been sending money to the source.   Mitchell also advised of a total of three packages, two of which had come to the address on Craig, and one of which was supposed to go to a "Keona" at Quonset Hut in the area of 6th and Oklahoma. Mitchell also stated that the methamphetamine arrived inside tennis ball tubes, and that the top tennis ball of each tube was intact, but that the balls beneath each held methamphetamine.  Mitchell also advised that Sorensen had already distributed the contents of one package, but had been arrested prior to the arrival of the second package.

Officer Dorr applied for and obtained search warrant 05-1286, for Mitchell's residence at 5908 Craig Drive.  The officers took pre-search photographs and then found the following significant items: Athletic Works brand tennis ball tubes, tennis ball from garbage containers on the deck, a methamphetamine pipe, a container of MSM, a 12/6/05 MoneyGram bearing Ronnie D. Sorensen as sender, and a second 12/6/05 MoneyGram bearing Sandra Mitchell as sender.  Officers Carson and Witte went to the neighbors at 5900 to ask permission to check their garbage.  Carson and Witte came back with two cardboard boxes, tubes, and balls seized from the garbage at 5900 Craig.

On December 13, 2005 Officer Dorr processed the evidence seized from the residece.  While examining and counting tennis balls from 5900 Craig, officers

discovered a tube containing three tennis balls, two of which had glued seams which appeared to remain intact, suggesting that the balls still contained suspected methamphetamine.  Officers opened the two and found that each contained a quantity of suspected methamphetamine within the plastic.

III.    ARGUMENT

    A.    A Search Warrant is Valid When Issued by a Neutral and Detached Magistrate and Based Upon Probable Cause

A search warrant must be based upon probable cause to believe that a crime has been committed and that the place named in the warrant is involved in the crime.  Shadwick v. Tampa, 407 U.S. 345, 350 (1972).  The search warrant must be issued by a neutral and detached magistrate.  Johnson v. United States, 333 U.S. 10, 14 (1948).  A warrant authorized by a neutral and detached judicial officer is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer engaged in the often competitive enterprise of ferreting out crime.  Id.

Officer Gordon Dorr requested a search warrant to search the residence based upon the statements of Mitchell during the interview and the methamphetamine found in the bag belonging to Mitchell.  The search warrant here was based upon probable cause and was issued by a neutral and detached magistrate.

6

B.    The Defendant Has Failed to Satisfy it's Burden of Proving that the Search Warrant Was Invalid

A search warrant is presumably valid.  To overcome this presumption, a defendant must prove by a preponderance of the evidence that there was a knowing and intentional falsehood or reckless disregard for the truth, and that the challenged statement or affidavit was essential to the finding of probable cause.  United States v. Dozier, 844 F.2d 701, 704 (9th Cir. 1988).  There is a presumption of validity with respect to the affidavit (or in this case, oral testimony) supporting the search warrant.  To obtain an evidentiary hearing, pursuant to United States v. Franks, 438 U.S. 154, 171-72 (1978), the defendant must satisfy five requirements: (1) the defendant must allege specifically which portions of the warrant affidavit are claimed to be false; (2) the defendant must contend that the false statements or omissions were deliberately or recklessly made; (3) a detailed offer of proof, including affidavits, must accompany the allegations; (4) the veracity of only the affiant must be challenged; and (5) the challenged statements must be necessary to find probable cause.  United States v. DiCesare, 765 F.2d 890, 894-95 (9th Cir. 1985).  See also United States v. Kiser, 716 F.2d 1268, 1271 (1983).

Applying the foregoing to the instant case, the five requirements have not been satisfied and this court should not grant an evidentiary hearing.  The defendant has failed to offer proof that there were false statements by Officer Dorr

7

and they were deliberately or recklessly made.  Officer Dorr provided the

magistrate judge with statements and information given to him by Mitchell and the

Officers who detained Mitchell.  The statements by Mitchell were sufficient to

establish probable cause for the issuance of a search warrant of her residence.

The defendant argues that the search warrant was invalid based on a

perceived violation of Mitchell's right to counsel.  During the interview with

Mitchell, she advised Officer Gorr that she was willing to answer questions after

initially requesting an attorney.  In Edwards v. Arizona, 451 U.S. 477, 484-

85(1981), the Supreme Court held that Miranda established that "when an accused

has invoked his right to have counsel present," [s]he "is not subject to further

interrogation by the authorities until counsel has been made available to him,

unless the accused himself initiates further communication, exchanges, or

conversations with the police."  See also United States v. Foster, 227 F.3d 1096,

1102 (9th Cir. 2000), and United States v. Younger, 398 F.3d 1179, 1185-86

(2005).

Here, there was no indication that Defendant's Miranda or Edwards rights

were violated.  During the interview, Officer Dorr read Mitchell her rights under

Miranda.  With a recorder running, Mitchell initially advised she wanted a lawyer,

but then advised she was willing to answer questions.  Thus, the defendant

knowingly, intelligently, and voluntarily agreed to talk to the officers after initially

indicating that she wanted an attorney.

The defendant argues that Mitchell was hallucinating from meth and that

there was no valid waiver of Mitchell's rights under <u>Miranda</u>.  To the contrary,

Mitchell showed awareness and understanding.  For example, Mitchell told the

officers her name was, "Sandra Bullock."  Mitchell merely provided false

information to the officer probably in an effort to hide her true identity.

Furthermore, Mitchell denied having any mental issues and stated that she was

"just high on meth she had consumed earlier."  Mitchell was not hallucinating and

based on the police reports, never asked to go to the hospital despite what the

defendant argues in his motion.  Rather, Officer Witte explained to her that she

may have to go to Providence Hospital or a family member's home to ensure she

want not going to harm herself.  In addition, Mitchell was conscious enough and

had the presence of mind to ask for an attorney during the interview before

changing her mind and asking to talk, which showed recognition of the situation.

The defendant has not satisfied his burden by attempting to show that there was a

<u>Miranda</u> or <u>Edwards</u> violation.  Furthermore, there was no evidence or indication

of a violation of <u>Miranda</u> or <u>Edwards</u>.

Furthermore, the Defendant argues that Officer Dorr's occupation as an

attorney provides a substantially greater understanding and training than that of an

9

ordinary officer.  However, an officer with a legal background is held to the same

standard as an ordinary officer with respect to <u>Miranda</u> or <u>Edwards</u> violations.

Officer Dorr did not deliberately or recklessly make false statements or omissions.

Officer Dorr informed the magistrate judge of the details of the interview with

Mitchell which were relevant to obtaining a search warrant of the residence.

     In his motion, the defendant states that Officer Dorr failed to advise the

magistrate of Ms. Mitchell's condition at the time she was arrested.  The defendant

cites no case law in support of the position that Officer Dorr has an obligation to

include this in his affidavit.  This was not done intentionally or recklessly by

Officer Dorr.  Officer Dorr went to the magistrate for the purpose of obtaining a

search warrant for the residence.  It was not necessary to state the condition of

Mitchell in order to obtain probable cause for the issuance of a search warrant.

Mitchell's condition, although initially cited as mentally unstable, was not a

material reason for the issuance of a search warrant of the residence.  The search

warrant was issued based upon the statements given by Mitchell after she

voluntarily and knowingly agreed to be interviewed by the Officers and the

methamphetamine found in the bag belonging to Mitchell.

IV.   <u>CONCLUSION</u>

     Based on the foregoing, the search warrant was issued by a neutral and

detached magistrate and based upon probable cause.  There was no violation of

Mitchell's right under <u>Miranda</u> or <u>Edwards</u> when Officer Dorr interviewed her.

The defendant has not established evidence that satisfies the requirements

necessary for a Franks hearing.  The evidence, therefore, should not be suppressed.

RESPECTFULLY SUBMITTED this <u>26th</u> day of July, 2006, in

Anchorage, Alaska.

DEBORAH M. SMITH
Acting United States Attorney

_s/ David A. Nesbett_____
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, Rm 253
Anchorage, Alaska  99513-7567
Phone: (907) 271-6306
Fax: (907) 271-1500
E-mail: david.nesbett@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on July 26th, 2006,
a copy of the foregoing  was served
electronically on Lance Wells.

s/ David A. Nesbett_____
Special Assistant U.S. Attorney