UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br>vs.<br><br>RONALD DALE SORENSEN,<br><br>        Defendant. | 3-06-cr-00019-RRB-JDR<br><br>**RECOMMENDATION<br>REGARDING<br>MOTION TO SUPPRESS**<br><br>(Docket No. 37) |

      Defendant **Ronald D. Sorensen** moves to suppress all evidence seized from Ramada Inn Hotel Room 207 located at 207 Muldoon Road on December 8, 2005 pursuant to a search warrant. Docket No. 37. The motion is opposed by the government. Docket No. 43. An evidentiary hearing was conducted on August 9, 2006. The issue presented is whether the police officers had a valid consent to enter a hotel room to execute an arrest warrant for Sorensen. Upon due

consideration of the evidence adduced and arguments of counsel the magistrate judge recommends that the court adopt findings of fact and conclusions of law as set forth below and that the motion to suppress to be denied.

## FINDINGS OF FACT

On December 8, 2005 at about 7:30 a.m. Anchorage Police Department (APD) Officer David Aldridge received a police dispatch informing him that a desk clerk at the Ramada Inn on Muldoon Road, Anchorage, Alaska had contacted the police to advise that she suspected that a person wanted by the police was located in Room 207 of the Ramada Inn. Tr. 8.[1]  The clerk had read in the newspaper that the police were looking for Robert Sorensen.  Officer Aldridge and APD Officers Hakenson and Jonathan Carroll proceeded to the Ramada Inn and contacted the front desk clerk who told the officers why she had called APD.  The desk clerk indicated that Room 207 was rented to a female, Pamela Cameron and the hotel clerk had seen someone matching Mr. Sorensen's description entering the room. Tr.10.

The uniformed officers proceeded to Room 207 and stood on either side of the doorway for 10 to 15 seconds to listen for any noise coming from inside the room. Tr. 11.  The officers heard two voices. Tr. 41.  Officer Aldridge then knocked on the door with three raps unaccompanied by any verbal statements. Tr. 11.  The

---

[1] Transcript of Evidentiary Hearing, August 9, 2006.  Docket No. 67.

officers heard some noise inside and the door was opened by a Black female, later identified as Pamela Cameron. Tr. 12. Officer Aldridge introduced himself to the female who responded "Hi." Tr. 12. The officer told her that they had reason to believe that someone they were looking for, Ronald Sorensen, was inside. Tr. 13. Officer Aldridge observed that Ms. Cameron matched the description of the renter provided by the desk clerk. Tr. 30. He identified himself as a police officer and asked if Sorensen was there. Officer Aldridge is certain that Ms. Cameron made a verbal response and then opened the door wider and stood against the wall to allow the officers to enter. Tr. 13, 28, 30, 39, 51. However, he did not recall the language of her response and did not record any verbal response in his report. According to Officer Aldridge the purpose of the report is to assist in his recollection of the events and to serve as a synopsis of what happened. Tr. 32, 50. I accept Officer Carroll's testimony that when Officer Aldridge asked Cameron if they could enter the room she shook her head up and down to indicate "Yes." Tr. 40. The officers did record in their reports that Ms. Cameron allowed them to enter the room. Neither officer made any contact tape of their encounter.

      As the officers entered, Officer Aldridge turned a corner and observed a male individual later identified as Ronald Sorensen putting on his pants. Tr. 15. The lights were off and an officer turned them on. Tr. 16. Officer Aldridge placed Sorensen's hands behind his back while they obtained his identification. Sorensen

was then allowed to continue dressing.  Officer Aldridge ran an APSIN computer check confirming the outstanding arrest warrant for Sorensen who remained compliant.  Tr. 15.

Between two beds the officers observed a small dark tote bag.  Officer Aldridge asked Sorensen if that was his bag and he said no.  Tr. 16.  The officer asked Cameron if that was her bag and she also stated no.  Tr. 16. Near the bag the officer observed a clear molded plastic tube about 8 to 10 inches long and a half inch diameter containing a white substance running through it and what appeared to be burnt residue at one end.  Tr. 17, 43.  In the officer's experience the plastic tube was consistent with apparatus used to consume a controlled substance.  Sorensen was arrested on the outstanding arrest warrant.  He was transported to the jail and remanded to custody.  Tr. 19.  Cameron left the room and Officer Aldridge sought and obtained a search warrant for the tote bag before looking inside the bag.  Tr. 19, 44.  While Officer Aldridge left to seek a search warrant Officer Carroll remained in the room by himself.

Ronald Sorensen gave a contrasting view of some of the events that occurred after the police arrived.  According to Sorensen an APD officer stated "APD open up."  He claims that he was nude when the police knocked on the door while Cameron was wearing only a bra and panties.  That may have been true when the officer knocked on the door, but it was not the situation when Cameron answered the

door.  According to the officer's testimony no officer made any statements such as "open up" before the door was opened by Cameron.  The officers testified that Cameron was more clothed than that described by Sorensen.  *Compare*, Tr. 22, 39, with Tr. 58.  I find the officer's testimony credible and reject the conflicting statements by Sorensen.  Sorensen claims that he heard an officer state that they were looking for him but he did not hear an officer ask to come into the room.  Both officers testified to the contrary.  Tr. 39.  Nor did he hear Ms. Cameron make any verbal response to such an inquiry.  Apparently, Sorensen was crouched putting on his pants when the exchange occurred between Cameron and the officers at the door.  Even if he did not hear Cameron make a verbal statement of consent to the officers as he claims (Tr. 63), this does not mean that she made no such utterance.

   According to Sorensen the officers had their pistols drawn but he does not remember which of the officers had a drawn pistol.  I conclude from the evidence that none of the officers had a drawn weapon before obtaining consent to enter the room.  The officers likely had drawn weapons after entering the room in the dark to locate Sorensen.  With respect to the solicitation of consent to enter the room I conclude that it was not based upon any threat of force or display of a weapon.

   Mr. Sorensen claims that Cameron gave no head movement that might indicate an affirmative response for the officers to enter.  I find this statement incredible since Sorensen at the time was scrambling to get dressed and was not in

a position to observe every movement of Cameron while the officers stood outside the door to the room. The officer testified that Sorensen was around the corner of the bedroom and not in a position to see the door. Tr. 24.

Officer Aldridge applied for and was issued search warrant 3AN-S05-1265 SW which allowed him to search the room and the bag. Inside the bag were various personal items which the defendant seeks to suppress.

## DISCUSSION OF THE LAW

### 1. Standing

The government argues that Sorensen lacks standing to challenge the authority of the officers to enter the room rented only to Pamela Cameron. The government contends that since Sorensen was not paying for the hotel room and denied interest in the items seized, the officers did not violate Sorensen's Fourth Amendment rights by entering the room or seizing property therein.

Based on the evidence presented I conclude that Sorensen was an invited overnight guest in Room 207. The desk clerk (Ms. Lynn-Regier) observed an individual matching the description of Sorensen entering Room 207 at approximately 0200 hours on December 8, 2005. The officers observed two beds in the room and it is undisputed that Sorensen was not dressed when the officers arrived at 7:30 a.m. According to Officer Aldridge the room appeared to have been slept in.

In <u>Minnesota v. Olson</u>, 495 U.S. 91, 99 (1990) the U.S. Supreme Court ruled that overnight guests have a legitimate expectation of privacy. The requirement of an expectation of privacy was earlier addressed by the court in <u>Rakas v. Illinois</u>, 439 U.S. 128, 143 (1978) wherein the court held that the capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the amendment has a legitimate expectation of privacy in the invaded place.

2.    **Entry Into The Hotel Room**

A warrantless entry into a hotel room must be justified by exigent circumstances. The United States Supreme Court has held that "absent consent or exigent circumstances" police cannot search for a fugitive in the house of a third party without a warrant based on evidence that the fugitive is expected to be in the house of the third party. <u>Steagald v. United States</u>, 451 U.S. 204, 213, 216 (1981).

The government relies upon a voluntary consent to enter the hotel room provided by the renter, Pamela Cameron. The prohibition of the Fourth Amendment against warrantless entry does not apply to situations in which voluntary consent has been obtained from the individual whose property is searched. Sorensen does not contest that Pamela Camera had authority to allow the officers to enter the room. Instead, he contends that she did not provide a voluntary consent. The officers concluded that they had obtained a consent from Cameron before they entered.

The Ninth Circuit has identified five factors for consideration in determining the voluntariness of a consent to search. <u>United States v. Soriano</u>, 361F.3d 494 (9th Cir.), <u>cert</u>. <u>denied</u> 543 U.S. 852, 125 S.Ct. 266 (2004). First, the court inquires whether the defendant was in custody. Cameron was not in custody. Second, the court considers whether the arresting officers had their guns drawn. Where consent was sought. I conclude that they did not. Third, the court considers whether <u>Miranda</u> warnings were given. Here, <u>Miranda</u> warnings were not applicable, and none were given. Fourth, the court considers whether the consentor was notified that she had a right not to consent. Officer Carroll testified that Officer Aldridge asked Cameron if the officers could come in. According to Officer Carroll, Cameron shook her head up and down, opened the door wider, backed away from the door and allowed the officers to enter. I conclude the inquiry made by Officer Aldridge was an implied notice that consent was being sought - not that entry was being demanded. The fifth factor inquires into whether the defendant had been told that a search warrant could be obtained. There was no threat of a search warrant nor threat of any other action that the officers might take if Cameron did not consent to their entry.

Under the totality of the circumstances I conclude that Cameron's consent was voluntary. Cameron was informed of the purpose of the officers' entry which was to locate and arrest Sorensen. Tr. 8, 36. In that context the officers did

not seek consent to search Cameron's rented room, nor did they search the room without a search warrant, beyond locating Sorensen who was readily visible to the officers when they stepped in side.  The officers had probable cause to believe that Sorensen was in Room 207 based upon information furnished by the desk clerk.

Sorensen does not claim to have rented the hotel room.  *See* Memorandum of Law in Support of Motion to Suppress, Docket No. 37, p.5.  He argues that he was "nothing more than an invited guest of Ms. Cameron to the hotel room." *Id.*   As such his consent to enter the room was not required.

The police officers were unable to attribute any particular verbiage to Ms. Cameron's response to their request to enter.  The court will not speculate as to what may have been said by her verbally.  I have considered whether Ms. Cameron's response was merely acquiescing to authority and not giving her decided consent for the officers to enter.  Based on the testimony that she shook her head up and down (in an affirmative gesture) and her opening the door slightly wider as well as her overall response, I conclude that Cameron did intend to invite the officers into the room. The fact that Sorensen did not hear any verbal response by Cameron is entitled to little weight since he was not in a position to hear what she may have said.  Sorensen did not argue that Cameron said or did anything to indicate a denial of consent.

Non-verbal consent to searches evidenced by gesture has been sustained. *See* for example, United States v. Wilson, 895 F2d 168, 170 (4th Cir. 1990) wherein the Court of Appeals held that the defendant consented to a search of his person by shrugging his shoulders and extending his arms in response to an agent's request to search the defendant. In United States v. Stewart, 93 F.3d 189, 192 (5th Cir. 1996) the court explained that "magic words" such as "yes" are not necessary to evince consent. The court held that "the key inquiry focuses on what the typical reasonable person would have understood by the exchange between the officer and the individual." *Id.*

For the foregoing reasons the Motion to Suppress lacks merit. The motion should be denied. IT IS SO RECOMMENDED. In light of the scheduled trial date per direction of the Hon. Ralph Beistline, objections, if any, to the Report and Recommendation shall be electronically filed and forwarded directly to his chambers on or before August 23, 2006, unless otherwise ordered by the court.

DATED this 15th day of August, 2006, at Anchorage, Alaska.

/s/ JOHN D. ROBERTS
JOHN D. ROBERTS
United States Magistrate Judge