Law Offices of Lance C. Wells, P.C.
733 W. 4th Ave, Suite 308
Anchorage, Alaska 99501
Phone: 907/274-9696
Fax: 907/277-9859
E-mail: lwells@gci.net
AK # 9206045

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>                            )<br>            Plaintiff,      )<br>                            )<br>   v.                       )<br>                            )<br>RONALD D. SORENSEN,         )<br>                            )<br>            Defendant.      )<br>_____) | Case No. 3:06-cr-00019-RRB |

**MEMORANDUM OF LAW
IN SUPPORT OF MOTION IN LIMINE TO SUPPRESS
EVIDENCE DERIVED FROM SEARCH WARRANT 3AN-05-1286 SW, ITEMS
RECOVERED FROM NEIGHBOR'S TRASH AND MS. MITCHELL'S STATEMENT**

**I.   Facts.**

On December 10, 2005, Mr. Thomas rented his residence at 520 Carin Place, #2. At about 10:45 p.m. that evening, Mr. Thomas was going to his truck, and noticed a woman, later identified as the defendant, Sandra Mitchell, standing in the road. She appeared to him to be suspicious and seemed to be hiding, and seemed scared and upset. Although he was approximately twenty yards from her, he could not understand what she was saying. The temperature was between thirty degrees Fahrenheit and thirty-seven degrees Fahrenheit, and the woman

was wearing a light jacket with a hood. She was carrying a big bag which she held close to her body with both of her hands. Mr. Thomas did not know the woman, and perceived she was in trouble. Although Ms. Mitchell said nothing threatening to Thomas, he became fearful for the safety of his family. He went inside to call 9-1-1. While inside, he observed Ms. Mitchell go into a neighbor's yard and then into his yard. He waited on his front porch for police to arrive.

Anchorage Police Officers Gregory Whitte and Eric Smith arrived at 520 Carin Place before eleven o'clock p.m. at about the same time. They parked about two houses away. When Officer Smith arrived, he observed Officer Whitte standing in a driveway with Ms. Mitchell in front of him. Ms. Mitchell was pacing back and forth in front of the officer, and flailing her arms. She was wearing a long sleeved T-shirt and had her coat tied around her waist. Officer Whitte motioned to Officer Smith to come forward. Officer Whitte then told Officer Smith that he believed they had an "eleven-thirty-eight" (police jargon for person with a mental problem). Ms. Mitchell appeared nervous and kept looking behind her back and glaring over her shoulder although no one else was there. Her hair appeared very curly and frizzy, almost standing straight up. Ms. Mitchell repeatedly told the officers not to touch her.

The officers decided to detain Ms. Mitchell and take her to Providence Hospital for an evaluation. They attempted to cuff Ms. Mitchell but she continued to clutch the bag with both hands. As Officer Smith attempted to cuff Ms. Mitchell, she pulled her arm from him toward the bag. Meanwhile, Police Officer Jack Carson had arrived at the scene and took the bag from Ms. Mitchell. Ms. Mitchell was yelling, "Stay away; don't touch me; I've done nothing wrong." During the tug-of-war that Officer Carson had with Ms. Mitchell over the bag, the officer jerked the bag out of her hand and some of the contents scattered on the ground.

Ms. Mitchell declined to identify herself. At the scene, Officer Whitte told Officer Carson that Ms. Mitchell claimed that she was Sandra Bullock. While at the scene, Officer Whitte had run that name and found no match for Sandra Bullock.

After Ms. Mitchell was placed in a patrol car, Officer Smith asked her if she had any mental issues. Ms. Mitchell responded that she did not, but added she had smoked two much meth and needed to go to the hospital. Ms. Mitchell had not been advised of her <u>Miranda</u> warnings prior to that colloquy. Officer Smith characterized the initial custody of Ms. Mitchell as detention for her care, and for public safety, not for the purpose of arresting her for a crime.

At the scene, Office Carson looked into the bag for any identification for the person, medicine, or weapons. Finding no identification, he looked inside this small "cat" bag and found a coffee cup with what looked like snow. His first impression was that she was bagging snow based upon her bizarre behavior. Shortly thereafter he recognized the substance might be crystal methamphetamine. He ceased his search and conducted a field test which proved positive for methamphetamine. Ms. Mitchell had previously told the officers that she had smoked too much meth and needed to go to the hospital. Because the officers found suspected illicit drugs on Ms. Mitchell, they arrested her and took her to jail rather than to the hospital. This is despite the fact that Ms. Mitchell told them she needed to go to the hospital due to the fact she had smoked too much methamphetamine. Police then went to the Alaska State Courthouse and sought a warrant for Ms. Mitchell's home. The court denied the initial warrant application.

Meanwhile, at the Drug Enforcement Agency, police undertook to interrogate Ms. Mitchell. One of the officers was Gordon Dorr, an attorney licensed in the State of Georgia. Officer Dorr works for the Anchorage Police Dept as a law enforcement officer. In a tape-recorded conversation, police read Ms. Mitchell a <u>Miranda</u> warning. Ms. Mitchell unequivocally asserted her right to counsel. The police then turned the tape off. Off-

tape, police officers apparently explained to Ms. Mitchell the potential consequences of her conduct. Approximately fifteen minutes later, police went back on tape, and Ms. Mitchell gave a statement. She confessed to her involvement with the contraband; where the contraband came from; how it arrived; and gave additional information regarding contraband within her residence. Officer Dorr, who obtained the illicit confession, went back to the state courthouse and obtained a warrant for Ms. Mitchell's house. The warrant issued is 3AN-05-1286 SW.

During the course of the post-<u>Miranda</u> interrogation, the confession portion, Ms. Mitchell further admitted that she had put some of the packaging for the contraband, found in her possession, in garbage bags on her next-door neighbor's property. Police recovered this evidence during the execution of the search warrant, along with various other documentation of alleged drug activity, as well as drugs themselves.

No affidavit was submitted by Officer Gordon Dorr. Instead, he gave sworn testimony before the Alaska Court Magistrate, who ultimately issued the warrant.

The testimony given by Officer Dorr, in support of the warrant, was based on the information given by Ms. Mitchell. Furthermore, Officer Dorr states during his testimony to the Magistrate,

> I don't have any knowledge prior to her statements tonight of those two working in concert. (Referring to Sorensen and Mitchell)

Ultimately, the Magistrate issued the warrant.

Subsequently, Ms. Mitchell and Mr. Sorensen were charged in this matter. Ms. Mitchell, through her attorney of record Michael Dieni with the Federal Defenders Office, filed five motions to suppress as follows: Motion to Suppress Warrantless Search of Defendant's Possessions, Docket No. 28; Motion to Suppress Defendant's Statement, Docket No. 29; Motion to Suppress Evidence Seized from Neighbor's Garage, Docket No. 31; Motion to Suppress Evidence Seized from Defendant's Home Pursuant to Search Warrant, Docket No. 33; and, lastly, Motion to Suppress Statements, Docket No. 41.

At the commencement of Ms. Mitchell's evidentiary hearing conducted February 3, 2006, the government withdrew its opposition to Docket Nos. 29, 31 and 33, on grounds that it did not intend to offer the evidence sought to be suppressed in those motions. AS a result thereof, the magistrate issued his report and recommendations indicating that the court should "grant as unopposed the motions to suppress at Dockets 29, 31 and 33."

Defendant respectfully moves to suppress all evidence derived as a result of the issuance of Search Warrant 3AN-05-

1286 SW, as the warrant was based on statements made by Ms. Mitchell after an unequivocal and custodial request for counsel. This motion is founded upon the Fifth and Sixth Amendments of the United States Constitution.

Police further gained the information relating to the neighbor's trash as the direct fruit of Ms. Mitchell's statement that was taken involuntarily after she requested counsel. This portion of the motion is based upon the Fourth, Fifth and Sixth Amendments to the United States Constitution. Defendant has standing to bring this motion.

## II.  Argument.

The constitutional mandated exclusion of a coerced confession and of evidence obtained as a result of that unlawfully obtained confession is equally applicable when introduction of the same evidence is sought at the trial of another. <u>In Re. J. Clyde K.</u>, 192 Cal. App. 3d 710, 237 Cal. Rptr. 550, 1987 Cal. App. LEXIS 1807 (Cal. App. 1st Dist. 1987). A defendant may challenge the voluntariness of another's confession allegedly coerced confession and the fruits thereof in accord to Supreme Court reasoning. People v. Gordon, 84 Cal. App. 3rd 913.

The case of <u>In Re Puma</u>, 204 Cal. App 3d 1228, 1988, states that the burden of proof is on the prosecution to prove the voluntariness of a defendant's confession or incriminating

evidence beyond a reasonable doubt. The court reaffirmed that criminal defendants do not have standing to object to evidence admitted in violation of another's 4th, 5th or 6th Amendment rights unless they can show that such evidence violated the defendant's own due process right to a fair trial. The statement of a suspect or witness is coerced if it is the product of police conduct which overcomes the persons free will. Evidence which is produced by coercion is inherently unreliable and must be excluded under the due process clause. In <u>Bradford v. Johnson</u>, (E.D. Mich 1972), 354 F. Supp 1331, the court held that the defendant was denied the right to a fair trail guaranteed under the 14th Amendment when his conviction was obtained by the use of a coerced confession by a witness. As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to "the very concept of justice." Such unfairness exists when a coerced confession is used as a means of obtaining a verdict of guilt." Id. At pp. 1337-1338, quoting <u>Lisenba v. California,</u> (1941) 314 U.S. 219, 236-237, 86 L. Ed. 166, 179-190, 62 S. Ct. 2807).

That the statements made by Ms. Mitchell to the arresting officers after she invoked her right to remain silent and requested an attorney more than once, not to mention her state of mind the result of drug intoxication were the result of an unlawful act being committed by the officers: the promise of

leniency as well as the threat of increased jail time unless she cooperated. See 18 U.S.C. Sec. 3504(a). Simply put, her will to remain silent was overborne.

### III. Conclusion.

It is respectfully requested that all evidence derived from the issuance of Search Warrant 3AN-05-1286 SW be suppressed, including any and all items removed from the neighbor's garbage and lastly that Ms. Mitchell's statement be suppressed as it is the direct result of coercion by the arresting officers. Her statement should further be inadmissible at trial of Mr. Sorenson. That no reference to any of the items seized above may be referred to during the trial of the defendant.

RESPECTFULLY SUBMITTED this 27th day of August 2006.

LAW OFFICES OF LANCE C. WELLS, P.C.

s/Lance C. Wells
Attorneys for Ronald D. Sorensen
733 W. 4th Ave, Suite 308
Anchorage, Alaska 99501
Phone: 907/274-9696
Fax: 907/277-9859
E-mail: lwells@gci.net
AK # 9206045

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on
August 27th, 2006, a copy
of the foregoing was served
electronically:

David A. Nesbett
Asst. U.S. Attorney
david.nesbett@usdoj.gov

s/Lance C. Wells